UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                          CASE No. 8:09-CR-466-T-33TGW

AARON McCLOUD

_____

## REPORT AND RECOMMENDATION

On June 19, 2009, law enforcement officers executed a search warrant at 1542 University Woods Place, in Tampa, during which they seized, among other things, cocaine, drug paraphernalia, and a shotgun. The defendant has filed a Motion to Suppress Evidence and Statements resulting from the search on the ground that the search warrant was not supported by probable cause (Doc. 32). The defendant alternatively argues that the shotgun must be suppressed because its seizure was not authorized by the search warrant. The motion was referred to me for a report and recommendation.

I have concluded that the search warrant is supported by probable cause and that it is therefore valid. Furthermore, the seizure of the shotgun was not unlawful even though it was not specified in the search warrant because it is both contraband and evidence of a crime. I recommend,

therefore, that the defendant's Motion to Suppress Evidence and Statements (id.) be denied.

I.

The defendant was indicted on charges of possession, with intent to distribute, cocaine; possession of a firearm in furtherance of a drug trafficking crime; and possession of a firearm by a convicted felon (Doc. 1). Evidence supporting these charges was seized during the execution of a search warrant at the defendant's residence, 1542 University Woods Place, Tampa, Florida 33612, which is a two-bedroom apartment within a multi-unit apartment complex ("the residence") (see Doc. 43-1, p. 4).

Samuel P. Bailey III, a deputy sheriff with the Hillsborough County Sheriff's Office, applied for the search warrant for the residence and executed the supporting affidavit (id., p. 5). Deputy Bailey, who has worked for the Hillsborough County Sheriff's Office for six and one-half years, has been assigned to a Street Crimes unit since 2007 (id.).  He has been investigating drug crimes since 2004 (id.). Deputy Bailey stated in the affidavit that he had "reason to believe ... that the residence ... [wa]s being used to store and distribute Cocaine and other illegal substances" (id., p. 7), and he set forth the circumstances supporting this belief (id., pp. 5-6).

The affidavit states that, on May 12, 2009, a complaint was received that "there is drug activity at the residence" and that "sales are occurring at all hours" (id., p. 5). Additionally, on May 14, 2009, a drug complaint was made through Crime Stoppers of Tampa Bay, which stated that "'Wayne Woodley' was involved in drug trafficking at the residence" (id.).

Deputy Bailey averred further that, between June 5, 2009, and June 12, 2009, he was contacted by a confidential informant who had previously worked for the narcotics section of the Hillsborough County Sheriff's Office Special Investigations Bureau ( the "C.I.") (id., pp. 5, 6). The C.I. told Deputy Bailey that "'Ace' was selling and storing cocaine at the residence," and that the "C.I. could purchase a quantity of cocaine from the residence" (id., p. 5). The affidavit then details two controlled purchases of cocaine by the C.I. from Ace, who was subsequently identified as the defendant.

Thus, between June 5 and 12, 2009, law enforcement gave the C.I. money to purchase cocaine from Ace after a search of the C.I. confirmed that the C.I. had no money, drugs, or other contraband (id.). Deputy Bailey subsequently observed a black male, Ace, walk out of the residence and through the apartment complex parking lot (id., p. 6). The C.I. exited Deputy

-3-

Collins's vehicle, and met with Ace in the parking lot (id.). The C.I. immediately returned to Deputy Collins's vehicle, and they drove to a predetermined location where the C.I. gave Deputy Collins a quantity of cocaine which the C.I. stated he purchased from Ace (id.). The C.I. was again searched for money, drugs, and other contraband, with negative results (id.). A field test confirmed that the substance was cocaine (id.).

Deputy Bailey stated further that, on another date between June 5 and June 12, 2009, he was in contact with the C.I. (id.). Law enforcement searched the C.I. for money, drugs, and other contraband, with negative results (id.). Deputy Bailey then gave the C.I. money to purchase cocaine (id.). During Deputy Bailey's surveillance, he observed Ace exit the residence (id.). Deputy Collins drove the C.I. to the parking lot of the residence and the C.I. walked to the stairwell of the residence and met with Ace (id.). Deputy Bailey observed the C.I. and Ace converse for about one minute, after which the C.I. returned to Deputy Collins's vehicle (id.). The C.I. gave Deputy Collins a quantity of cocaine, and the C.I. stated that he purchased it from Ace (id.). The C.I. was again searched for money, drugs, and other contraband, with negative results (id.). A field reagent test confirmed the substance was cocaine (id.).

Based on this affidavit, a search warrant was signed by a Hillsborough County Circuit Judge on June 19, 2009, to search the residence located at 1542 University Woods Place, Tampa, Florida 33612 (id., pp. 1-2). The search warrant described the property that was to be seized as follows (id., p. 2):

> CONTROLLED SUBSTANCES TO WIT: COCAINE, PROCEEDS OF ILLEGAL DRUG TRAFFICKING, TELEPHONE NUMBERS OR PHOTOGRAPHS RELATED TO ILLEGAL DRUG TRAFFICKING, ILLEGAL DRUG PARAPHERNALIA USED TO COMPOUND[,] HARVEST, MANUFACTURE, STORE, PACKAGE, SMUGGLE, TRANSPORT, DISTRIBUTE, OR USE/INGEST ILLEGAL CONTROLLED SUBSTANCES.

On June 19, 2009, law enforcement officers executed the search warrant and seized from the residence, among other things, cocaine, marijuana, drug paraphernalia, and a 12-gauge Browning shotgun (see Doc. 32, p. 2; Doc. 37, p. 3). The defendant, who was known to law enforcement as "Ace," was arrested at that time.

The indictment in this case was returned on October 7, 2009 (Doc. 1). The defendant recently filed a motion to suppress "any and all evidence" obtained during the execution of the search warrant (Doc. 32, p. 1). The defendant states two grounds for his motion: "(1) that the facts set forth

in the affidavit in support of the search warrant do not establish probable cause for the issuance of the search warrant and the subsequent search and (2) the warrant did not authorize the seizure of firearms" (id.). The Government filed an opposition memorandum, arguing that the totality of the circumstances establish probable cause to believe illegal contraband was in the residence, and that the gun was legally seized as contraband and evidence of a crime (Doc. 37).

A hearing on the motion took place on September 17, 2010 (see Doc. 44). The defendant was present at the hearing. Neither party proffered exhibits. The only person to testify was Government witness Deputy Bailey. As indicated, Deputy Bailey was involved in the investigation of drug trafficking at the residence, and he applied for the search warrant and executed the supporting affidavit.

At the hearing, Deputy Bailey testified to the circumstances surrounding the execution of the search warrant. Deputy Bailey testified that, when law enforcement arrived at the residence, the defendant stepped out of the residence just as they were about to knock on the door. Law enforcement ordered the defendant to the ground, and secured him. The officers then

-6-

entered the residence to remove all persons inside.  Nikita Robinson was found in the closet of the south bedroom.

Deputy O'Connor subsequently reentered the south bedroom, where he discovered a short-barreled shotgun in the closet.[1]  Deputy Bailey stated that he saw the shotgun, and it was apparent the barrel had been shortened from its original length.  Deputy Bailey stated that it is a violation of Florida law to possess a short-barreled shotgun.  Significantly, the defendant told law enforcement that everything in the residence belonged to him.

Deputy Bailey testified further that he has come into contact with guns in connection with the narcotics trade.  Thus, Deputy Bailey stated that, based on his training and experience, guns and drugs "go together."

Deputy Bailey stated that the defendant was arrested on charges of armed trafficking in cocaine, possession of a short-barreled shotgun, possession of a firearm by a felon, possession of ten or more counterfeit bills, and possession of marijuana with intent to distribute.  Deputy Bailey stated

---

[1]The memoranda state further that law enforcement found in the south bedroom cocaine, marijuana, counterfeit U.S. currency, and a cutting agent (Doc. 32. p. 5; Doc. 37, p. 4).

that law enforcement seized the shotgun because it was evidence of armed drug trafficking.

## II.

The defendant argues first that the search and seizure of property from his residence was not lawful because the search warrant was not supported by facts establishing probable cause to believe there was evidence of drug trafficking in the residence (Doc. 32). This argument is baseless.

A search warrant may be issued when a neutral issuing magistrate makes a practical and common sense decision that, based on the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). "[P]robable cause is a fluid concept – turning on the assessment of probabilities in particular factual contexts – not readily, or even usefully, reduced to a neat set of legal rules." Id. at 232. Therefore,

> [c]ourts reviewing the legitimacy of search warrants should not interpret supporting affidavits in a hypertechnical manner; rather, a realistic and commonsense approach should be employed so as to encourage recourse to the warrant process and to promote the high level of deference traditionally given to magistrates in their probable cause determinations.

U.S. v. Miller, 24 F.3d 1357, 1361 (11th Cir.1994).  Furthermore, where, as here, the search is conducted under the authority of a warrant, the defendant challenging the search bears the burden of showing that the warrant is invalid.  U.S. v. Osborne, 630 F.2d 374, 377 (11th Cir. 1980), cert. denied, 450 U.S. 934 (1981); U.S. v. de la Fuente, 548 F.2d 528, 533-34 (5th Cir. 1977), cert. denied, 431 U.S. 932 (1977).

   The search warrant affidavit established that there was more than a fair probability that evidence of  drug trafficking would be found in the residence.   Most significantly, the affidavit describes two controlled purchases of cocaine between a confidential informant and the defendant, with each sale occurring at the defendant's apartment complex immediately after the defendant exited the residence.

   Thus, on two separate occasions between June 5 and 12, 2009, law enforcement gave the C.I. money to purchase cocaine after confirming that the C.I. did not possess any money, drugs, or other contraband (see Doc. 43-1, pp. 5-6).  Immediately following each meeting with the defendant, the C.I. returned to law enforcement with cocaine and no money, from which it is reasonably inferred that the defendant sold the cocaine to the C.I. (id.). Further, the C.I. told law enforcement on both dates that he had purchased the

cocaine from the defendant (id.).  Therefore, each controlled drug transaction

establishes probable cause that the defendant was engaged in drug trafficking,

and the defendant concedes this conclusion (see Doc. 32, p. 7)(the controlled

purchases "establish probable cause to believe that 'Ace' sold cocaine to the

C.I. and provides probable cause for his arrest for distribution of cocaine").

The defendant, however, contends that the affidavit failed to

establish probable cause to believe there was evidence of criminal activity in

the residence (id.).  In order to establish probable cause to search a residence,

"[t]here need not be an allegation that the illegal activity occurred at the

location to be searched."  U.S. v. Kapordelis, 569 F.3d 1291, 1310 (11th Cir.

2009), cert. denied, 130 S.Ct. 1315 (2010).  However, the affidavit must

"establish a connection between the defendant and the residence to be

searched and a link between the residence and the criminal activity." Id. This

"nexus ... can be established from the particular circumstances involved and

need not rest on direct observation." U.S. v. Schimmel, 317 Fed. Appx. 906,

908 (11th Cir. 2009)(unpub. dec.)(quoting U.S. v. Jenkins, 901 F.2d 1075,

1080 (11th Cir. 1990)).

Deputy Bailey's affidavit clearly establishes the requisite link

between the defendant, the residence, and the likelihood of illegal contraband

in the residence. Thus, with regard to both controlled drug purchases, law enforcement observed the defendant exit the residence immediately before selling cocaine to the C.I. (see Doc. 43-1, pp. 5-6). This created a strong probability that illegal drugs and/or drug paraphernalia were being stored in the residence. Cf. U.S. v. Akel, 337 Fed. Appx. 843, 858 (11th Cir. 2009)(unpub. dec.), cert. denied, 130 S.Ct. 1161 (2010)(the fact that the defendant "traveled directly from the residence to the controlled buys and immediately returned to the residence afterward indicates that the narcotics he sold to the CI were being stored in the home").

This probability was further strengthened by two anonymous tips that drug activity was occurring in the residence, and the C.I.'s statement that Ace was selling and storing cocaine in the residence (see Doc. 43-1, p. 5). Thus, although these pieces of information do not constitute probable cause in themselves, they further buttress the connection between the residence and illegal drug activity.[2]

---

[2]The defendant challenged in his memorandum the reliability of the confidential informant's statement that Ace was selling and storing drugs in the residence (Doc. 32, pp. 8-9). However, that issue does not need to be addressed because probable cause to search the residence is established by law enforcement's observations of the defendant exiting the residence immediately before engaging in the drug sales.

In sum, the totality of the circumstances plainly establishes that there was more than a fair probability of finding evidence of drug trafficking in the residence. Consequently, the search warrant for the residence was clearly supported by probable cause. The defendant's challenge to the search warrant is, therefore, meritless. Indeed, if this search warrant application and affidavit had been presented to me, I would have issued the search warrant without hesitation.

### III.

The defendant argues further that, even if there was probable cause supporting the issuance of the search warrant, the shotgun seized by law enforcement must be suppressed because it was not identified in the search warrant as an item to be seized (Doc. 32, pp. 11-12). The Government argues meritoriously that law enforcement legally seized the shotgun because it was seizable contraband, as well as evidence of a crime.

The Fourth Amendment requires search warrants to "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Therefore, in general, only items described in the search warrant may be seized. U.S. v. Jenkins, supra, 901 F.2d at 1081. "An exception to this rule occurs when in the course of performing a lawful search

for an item listed on the warrant, the officers come across other articles of an incriminatory character." Id. The Government agreed at the hearing that it has the burden of proving the reasonableness of seizing property not identified in the search warrant. See Wayne R. La Fave, Search and Seizure, vol. 6, §11.2(b), p. 43, n. 34 (4th Ed. 2004); see also U.S. v. Bachner, 706 F.2d 1121, 1126 (11th Cir. 1983), cert. denied, 464 U.S. 896 (1983)(it is the Government's burden to prove the reasonableness of a warrantless seizure).

Law enforcement seized during its execution of the search warrant a 12-gauge shotgun that was discovered in the closet of the residence's south bedroom.  Deputy Bailey testified that the shotgun was seized as evidence of the state charge of armed drug trafficking.  In this regard, Deputy Bailey explained at the hearing that, in his training and experience, guns and drugs "go together."

Based on the close connection between drugs and guns, the Eleventh Circuit rejected a similar motion to suppress a warrantless seizure of a firearm in U.S. v. Prather, 279 Fed. Appx. 761 (11th Cir. 2008)(unpub. dec.), cert. denied, 129 S.Ct. 1392 (2009). Thus, similar to the defendant in this case, the defendant in Prather challenged the seizure of a gun on the basis that the search warrant authorized only seizure of items related to the sale,

distribution and manufacturing of drugs. Id. at 764-65. The Eleventh Circuit rejected this contention, stating (id. at 766):

> [a]lthough [the] warrant [did not] specifically authorize[] the seizure of weapons, the police did not err in confiscating weapons when they found them. When law enforcement officers stumble across hidden guns during a lawful search for drugs, they are allowed to draw the reasonable inference that the guns may be related to drug trafficking occurring at the location.

See also U.S. v. Smith, 918 F.2d 1501, 1509 (11th Cir. 1990), cert. denied, 502 U.S. 849 (1991), cert. denied, 502 U.S. 849 (1991)(firearms are "tools of the [drug] trade"). Therefore, law enforcement's seizure of the shotgun was lawful.

Additionally, Deputy Bailey testified at the hearing that the firearm was a short-barreled shotgun, the possession of which is illegal under Florida law. See Fla. Stat. §790.221 (It is unlawful for any person to own or to have in his or her care, custody, possession, or control any short-barreled rifle, short-barreled shotgun, or machine gun which is, or may readily be made, operable...). It is also illegal under federal law to possess an unregistered short-barreled shotgun. 26 U.S.C. 5845(a), 5861(d); see, e.g., U.S. v. Harrison, 362 Fed. Appx. 958 (11th Cir. 2010)(unpub. dec.). Deputy Bailey testified at the hearing that it was obvious that the barrel of the

shotgun was shortened.  Further, at the time of his arrest, the defendant claimed ownership of everything in the apartment.  Consequently, when the defendant was arrested, he was charged with violating the Florida statute. Therefore, the defendant's alleged possession of a short-barreled shotgun, which is a crime in itself, is another lawful basis for the gun's seizure.

In sum, the Government stated two lawful grounds for seizing the shotgun discovered during execution of the search warrant.  Accordingly, the shotgun should not be suppressed on the ground that its seizure was not authorized in the search warrant.

IV.

For these reasons, I recommend that Defendant's Motion to Suppress Evidence and Statements (Doc. 32) be denied.

Respectfully submitted,

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

DATED: SEPTEMBER 26, 2010

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days from the date

of its service shall bar an aggrieved party from attacking the factual findings on appeal.  28 U.S.C. 636(b)(1).